FRANCISCO VÉLEZ COLÓN ET AL., demandantes y recurrentes, *v.* IGLESIA CATÓLICA ET AL., demandados y recurridos.

*Número:* R-72-250          *Resuelto:* 15 de septiembre de 1976

*José Aulet,* abogado de los recurrentes; *Joaquín Lago Padín* y *Joaquín Lago Miranda,* abogados de la Iglesia Católica, Diócesis ·de Arecibo; *R. Martínez Rodríguez* y *Antonio Maysonet Rosario,* abogados de Juan Rodríguez y Delia Picón.

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

No pocas veces los tribunales se confrontan con casos en que una honda compasión por la gravedad de los daños sufridos puede llevar a una forzada norma de responsabilidad. El sentimiento de lástima es comprensible pero la norma de responsabilidad ha de formularse en base a criterios racionales y razonables para que sea útil y de aplicación uniforme en situaciones similares. De otra manera, podríamos muy bien satisfacer nuestros sentimientos personales pero no nuestra función de promover la certeza de la norma en un área de conflicto como es la de la responsabilidad civil derivada de culpa o negligencia.

Prevenido nuestro ánimo, consideremos ahora la controversia que plantea este recurso.

El menor Luis Rubén Colón sufrió severos daños como consecuencia del disparo de un cohete en una verbena que se celebró en el barrio Sabana Hoyos de Arecibo. Ha perdido la visión total ·de un ojo, su rostro ha quedado mutilado con motivo de la depresión de la región frontal del cráneo y su personalidad ha sido marcadamente afectada.

El tribunal de instancia declaró con lugar la demanda contra el que disparó el cohete y sin lugar la acción instada contra la Iglesia Católica y contra los esposos Rodríguez Picón concluyendo que no hubo prueba que estableciera relación causal entre alguna acción u omisión negligente o culposa

de ellos con el accidente que ocasionó los daños al menor Luis Rubén.

Los padres de Luis Rubén sostienen que debe imponérsele responsabilidad a la Iglesia Católica porque ésta auspició la verbena y se benefició económicamente de ella. En vista de la gravedad de los daños acordamos expedir. Concluimos que no tienen razón.

Las conclusiones de hecho del tribunal de instancia, ampliamente sostenidas por la prueba desfilada, revelan lo siguiente:

Un grupo de vecinos del barrio Sabana Hoyos de Arecibo organizó una verbena con el propósito de recaudar fondos para ayudar a sufragar deudas de la capilla católica de dicho barrio. El día de la verbena los co-recurridos esposos Rodríguez Picón cuando se dirigían al lugar de las festividades recogieron unos cohetes en un negocio del camino y los entregaron en la casa del Sr. Agustín González junto con unas vituallas que habrían de venderse en la fiesta. La Sra. Picón formaba parte del comité organizador de la verbena y estaba a cargo de las actividades relacionadas con el reinado y con la caravana que habría de recorrer los barrios adyacentes invitando al público a que asistiera a la fiesta.

A eso de las diez de la noche del día de la verbena, el hijo del señor Agustín González, un joven de 17 años de edad, prendió uno de los cohetes que por alguna razón desvió su curso y fue a dar contra la frente del menor Luis Rubén ocasionándole los graves daños que mencionamos anteriormente. No aparece del récord quien lo autorizó a prender el cohete.

La Iglesia Católica no tuvo participación en la organización de la verbena, salvo que el párroco, quien iba al barrio a dar clases de doctrina un día a la semana y misa el primer y tercer domingo de mes, acogió con beneplácito la iniciativa de los feligreses y los exhortó a que continuaran con el proyecto por considerarlo útil para unir la feligresía. Su participación se limitó a invitar a la feligresía a que cooperara con

la actividad y a aconsejar a los organizadores del acto. No tuvo siquiera conocimiento de la existencia de cohetes, los cuales fueran regalados por el Municipio de Arecibo para animar la fiesta. (¹)

Con respecto a la ausencia de control de la Iglesia Católica sobre la iniciativa de los feligreses, el Canciller de la Diócesis de Arecibo depuso:

"· · · · · · · ·

P. ¿Por su experiencia, se necesita permiso de alguien como usted, con jerarquía?

R. Un grupo de ciudadanos residentes de un barrio pueden hacer cualquier actividad, una actividad por su cuenta y después darle el producto de esa actividad, lo podrían entregar luego a la parroquia o al párroco.

P. ¿Y para eso no tendrían que tener permiso o se permite usar el nombre de la iglesia sin autorización previa?

R. Se podría. No podemos tener control dondequiera que aparecen nombres religiosos y demás usándose para cualquier fin y no tenemos control de eso. Un grupo de ciudadanos podría hacer cualquier actividad en público y organizarla por su cuenta y entregar los beneficios a la parroquia." (Deposición págs. 6-7.)

El Padre Tosello Giangiacomo, encargado de la capilla del barrio Candelaria, confirmó lo anterior al declarar en el juicio:

"P. ¿Qué intervención tuvo usted como sacerdote del barrio en esas actividades?

R. Animar a los feligreses para que cooperaran. (T.E. pág. 44.)

· · · · · · · ·

P. ¿Qué intervención tuvo usted en la verbena?

R. Cuando presentaron esa idea yo les dije, 'ustedes tienen la aprobación mía pero no cuenten con mi ayuda física porque estoy demasiado de ocupado.' Id. 48.

· · · · · · · ·

---

(¹) La demanda contra el Municipio de Arecibo se archivó por desistir los recurrentes.

P. ¿Quién era la persona encargada de esa actividad?

R. Los feligreses.

P. ¿Quién le encomendó eso?

R. Era una comisión de todos los que estaban encargados que colectaban el dinero de los votos de la reina y ella misma con la mamá." (T.E. pág. 55.)

También en la deposición que obra en autos depuso a preguntas del recurrente:

"P. ¿Quién estaba a cargo de eso, de dirigir eso?

R. Los feligreses.

P. ¿Dirigían en qué sentido?

R. En organizar, recibir dinero y de ver qué se iba a tocar en la cosa." (Deposición pág. 29.)

■ Surge, pues, claramente del récord que la Iglesia Católica no organizó, ni promovió, dirigió o tuvo control alguno en la celebración de la verbena ni intervino en ninguno de sus actos. Tampoco es imputable a la Iglesia Católica la negligencia que pudieran haber tenido los feligreses en la organización, supervisión y control de las actividades de la verbena. Como se sabe, la obligación de reparar daños en nuestro ordenamiento jurídico generalmente dimana de un hecho propio. Art. 1802 Código Civil, 31 L.P.R.A. sec. 5141.(²) Excepcionalmente, se impone responsabilidad por hechos ajenos cuando existe un nexo jurídico previo entre el causante del daño y el que viene obligado a repararlo. Art. 1803, Código Civil, 31 L.P.R.A. sec. 5142,(³) *Vélez* v. *Llavina*, 18 D.P.R. 656 (1912).

---

(²) El Art. 1802 provee:

"El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización."

(³) El Art. 1803 provee:

"La obligación que impone la sección anterior es exigible, no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se debe responder.

Como ya vimos, no existe en este caso el hecho propio generador de responsabilidad. Tampoco existe el nexo jurídico previo entre la Iglesia y los feligreses que pudiera dar base a la imposición de responsabilidad a aquélla por los actos de éstos. Los feligreses actuaron de su propia iniciativa con el loable propósito de contribuir al sostenimiento del templo y no como empleados o agentes de la Iglesia.

El recurrente también argumenta que debe imponérsele responsabilidad a la Iglesia Católica por el hecho de haberse ésta beneficiado económicamente de la actividad organizada por los feligreses. El beneficio económico, sin más, no es suficiente para imponer responsabilidad en las circunstancias de este caso.

El criterio de beneficio económico lo hemos aplicado limitadamente en otras circunstancias para extender la responsabilidad del dueño de una propiedad con un invitado. *Weber* v. *Mejías*, 85 D.P.R. 76 (1962). Véase al efecto la discusión del tópico en Harper & James: *II The Law of Torts*, pág. 1478 (Ed. 1956). También la hemos aplicado para ampliar la responsabilidad vicaria cuando un empleado realiza una gestión que tienda a lograr la encomienda del patrono. *Martínez* v. *Comunidad M. Fajardo*, 90 D.P.R. 461 (1964). Prosser, *Law of Torts*, pág. 458 (4th ed. 1971). La responsabilidad en estos casos se justifica por excepción como norma de política pública cuando existe un nexo jurídico previo del cual dimana la obligación de reparar el daño. Justificar la reparación del daño por el hecho ajeno exclusivamente a base de un beneficio económico, como pretende el recurrente, dilataría el concepto de responsabilidad a extremos tan laxos que desnaturalizaría el esquema impositivo del Art. 1803, *supra*.

---

"Lo son igualmente los dueños o directores de un establecimiento o empresa respecto de los perjuicios causados por sus dependientes en el servicio de los ramos en que los tuvieran empleados, o con ocasión de sus funciones."

■ Aun enfocando el caso en la forma más favorable para el recurrente no cabe imponerle responsabilidad a la Iglesia Católica bajo la institución de gestión de negocios ajenos consagrados en los Arts. 1788 a 1794, Código Civil, 31 L.P.R.A. secs. 5101 a 5107. No están presentes los elementos jurídicos indispensables que permitan encajar la situación factual de autos en las relaciones y consecuencias que dimanan de una gestión de negocio ajeno. Al respecto nos dice Manresa:

"Según la legislación de Partidas y la jurisprudencia del Tribunal Supremo, repetidísima y constante en este punto, es requisito indispensable, para que se dé lugar al cuasicontrato de que nos ocupamos, que los negocios objeto del mismo se hallen abandonados, bien por ausencia o negligencia, o bien por enfermedad o incapacidad. El Código Civil nada dice acerca de ello; pero entendemos que esta omisión en la nueva ley no puede ser causa de dificultad ni de opiniones distintas, puesto que esa condición es inherente al citado cuasicontrato, porque—como ha dicho un autor—el inmiscuirse en la gestión de los bienes o de los negocios que están atendidos por sus dueños 'sería una verdadera usurpación, y aun en el caso de abandono, la prohibición del dueño es bastante para que el gestor oficioso no pueda llevar adelante la gestión, so pena de exponerse a contraer las consiguientes responsabilidades, sin adquirir por su parte derecho alguno.' " *Comentarios al Código Civil Español,* Tomo 12, Art. 1887, 6ta. Ed. (1973).

■ El beneficio económico es sólo uno de los múltiples elementos que pueden integrar el cuasicontrato de gestión de negocios ajenos. Por sí solo no puede justificar la imposición de responsabilidad.

En orden a lo anterior somos de opinión que no incidió el tribunal de instancia al desestimar la demanda instada contra la Iglesia Católica. En virtud de los mismos razonamientos, se impone igual conclusión con respecto a la desestimación de la demanda instada contra los esposos Rodríguez Picón. Estos participaron en un aspecto de la celebración de la verbena, el del reinado y la caravana de automóviles. La participación de

ellos con los cohetes fue puramente accidental, insuficiente para imponerles responsabilidad.

*Se dictará sentencia confirmando la aquí recurrida.*

El Juez Asociado Señor Rigau emitió opinión disidente con la cual concurren el Juez Presidente Señor Trías Monge y el Juez Asociado Señor Irizarry Yunqué.

—O—

Opinión disidente del Juez Asociado Señor Rigau con la cual concurren el Juez Presidente Señor Trías Monge y el Juez Asociado Señor Irizarry Yunqué.

San Juan, Puerto Rico, a 15 de septiembre de 1976

Se trata de un caso de daños. Los hechos son sencillos y no están controvertidos. En lo pertinente se contraen a lo que sigue. Un niño de ocho años de edad asistió con sus padres a una verbena que se celebraba para levantar fondos para la Iglesia Católica, denominada de aquí en adelante la codemandada. Un cohete allí disparado fue a dar en la cara del menor demandante.

Con motivo de ello el niño Luis Rubén Colón sufrió un trauma craneocerebral que le produjo una fractura abierta en la parte frontal del cráneo, con depresión, hemorragia intracerebral y contusión cerebral severa. Perdió la visión total de un ojo, con la considerable incapacidad física que ello conlleva. Su rostro ha quedado mutilado con motivo de la depresión de la región frontal del cráneo. Su personalidad y sicología han sido marcada y adversamente afectadas. Los padres del menor han padecido grandes sufrimientos y angustias mentales como consecuencia de todo ello. Lo anterior son conclusiones del juez sentenciador. A la fecha del juicio, expresa la sentencia, el menor aún sufría fuertes dolores de cabeza.

La ilustrada Sala sentenciadora declaró la demanda con lugar contra el codemandado Luis González Rosario (joven de 17 años que disparó el cohete) y sus padres, pero la de-

claró sin lugar en cuanto a la codemandada. A petición del menor y sus padres el Tribunal decidió revisar.

El recurrente señala como error la determinación del tribunal en el sentido de que no se probó relación causal entre la acción de la codemandada y el daño perpetrado. Esa también es la posición de la codemandada ante nos. Entiendo que el error señalado se cometió.

El caso plantea dos cuestiones de derecho las cuales, a mi modo de ver, hacen forzoso modificar la sentencia en cuanto a la codemandada. Estas son las siguientes: (1) como se verá, la prueba demuestra que la codemandada era promotora o, por lo menos, copromotora de la verbena, y (2) que dicha actividad se llevó a cabo para recaudar fondos para aquélla. Esto es, se llevó a cabo para su beneficio económico. Creo que cualquiera de estas dos cuestiones hacen necesario la modificación de la sentencia.

En primer lugar, veamos la prueba, la cual está recogida en dos piezas de transcripción de evidencia y en dos deposiciones. La madre del menor perjudicado declaró como sigue:

"P.—¿Usted estaba en la verbena con los nenes?
R.—Sí, señor.
P.—¿Cuántos son?
R.—Dos y el nene tres.
P.—¿La invitó alguien a usted?
R.—La Iglesia hacía la invitación.
P.—¿Quién la hizo?
R.—El Padre, que cooperaran y asistieran a la verbena."

Al testigo Juan Serrano Rosario de 64 años de edad, se le preguntó que en dónde estaba en la fecha de los hechos. Contestó: "En la verbena que se estaba efectuando en el parque de Candelaria a beneficio de la Iglesia Católica."

El testigo Pedro Juan Rodríguez de León, al preguntársele sobre dicha fecha declaró: "Ese día específicamente acompañaba a mi esposa a llevar una contribución que ella iba a hacer a la Iglesia con relación a una fiesta para una

verbena que se estaba celebrando. . . ." Más adelante el mismo testigo declaró que su esposa estaba cooperando para beneficio de la Iglesia con dicha verbena.

La testigo Delia Picón de Rodríguez, al serle preguntado si tenía conocimiento de la actividad, declaró: "Como yo asisto a la Iglesia lo anunciaban en las misas los domingos que se iba a celebrar la verbena." La misma testigo, al declarar sobre la contribución que le solicitaron se expresó como sigue:

"R—Esa contribución me la pidieron.
P—¿Quién se la pidió?
R—El Comité Organizador.
P—¿Le pidió qué?
R—Que todo el que quisiera cooperar con algo para sacar fondos que lo hiciera.
P—¿Sacar fondos para qué?
R—Para la Iglesia Católica."

Dicha testigo, en la deposición, declaró que el sacerdote dirigía el grupo que organizaba la verbena.

Veamos la declaración del sacerdote Tosello Giangiacomo. El distinguido religioso declaró que, además de otros deberes que tenía, era el encargado de la capilla del Barrio Candelaria, la localidad envuelta en este caso. En la deposición declaró como sigue:

"P. ¿Cómo se hacían las invitaciones?
R. Por voz viva en la iglesia. No se pusieron avisos de invitación, excepto lo que yo les decía.
P. ¿Qué decía?
R. Que en tal fecha se va a llevar a efecto una verbena y están todos cordialmente invitados. Invitando a los vecinos a gastar sus chavos.
P. Eso se lo decía a los feligreses usted?
R. Sí, señor."

Declaró también el sacerdote que él "animaba a los feligreses para que cooperaran"; que él dio su aprobación para la celebración de la verbena; que él "aconsejaba" en cuanto a

dicha actividad; admitió que la dirigía aunque no podía trabajar físicamente en ella; reiteró que invitaba a los feligreses en las misas a concurrir a la verbena y que "en ésta en particular la contribución era para la Iglesia."

Surge, pues, de la prueba que la codemandada era promotora de la verbena. Allí se utilizaron cohetes. Cuando se utilizan fuegos artificiales—de los cuales los cohetes son una variedad—en algún acto público, el promotor o promotores deben proveer un sitio seguro a los espectadores y seleccionar a un experto o persona diestra en esos menesteres para manipularlos. *Bonet* v. *Municipio de Barceloneta*, 87 D.P.R. 81, 87 (1963), y autoridades allí citadas. Ninguna de esas dos cosas se proveyó en esta ocasión. El uso inexperto y negligente de los explosivos fue la causa del accidente. La promotora tenía el deber de proveer condiciones más seguras para sus invitados. El promotor no puede evadir su responsabilidad alegando que no ejercía control sobre el manejo y uso de los cohetes. Si esto fuese posible sería fácil evadir dicha responsabilidad en casi todos los casos. Véanse, *Spenzierato* v. *Our Lady Monte Virgine Soc. of Mutual Benefit*, 169 A.2d 831 (1934); Anno: *Liability of private promoter or operator of public fireworks exhibition or display for personal injury, death, or property damages*, 81 A.L.R.2d 1207; Anno: *Liability for injury by explosive or the like found by, or left accesible to a child*, 10 A.L.R.2d 22, 146–155.

La segunda fuente de responsabilidad civil de la codemandada, a la que antes aludimos, surge del hecho de que la verbena se celebraba para recaudar fondos para aquélla. Constituye lo que la jurisprudencia y la doctrina denominan el criterio de beneficio económico. Ya hemos reconocido y aplicado dicha doctrina en el campo de daños y perjuicios. *Martínez* v. *Comunidad M. Fajardo*, 90 D.P.R. 461, 467 (1964); *Weber* v. *Mejías*, 85 D.P.R. 76, 79 (1962). Véase también, *Lugo Montalvo* v. *González Mañón*, 104 D.P.R. 372 (1975), en donde resolvimos que si la acción o gestión del marido aprove-

cha económicamente a la masa ganancial la responsabilidad civil, de haberla, será de cargo de dicha masa. Allí, citando a Scaevola, expresamos que quién está a las ganancias debe estar a las pérdidas.

El beneficio económico como fuente generadora de responsabilidad civil no es nada nuevo en nuestro derecho autóctono. El Código Civil lo reconoce expresamente en el régimen de las obligaciones que se contraen sin convenio. Así por ejemplo, en lo pertinente, el Art. 1793 de dicho Código, 31 L.P.R.A. sec. 5106, dispone que "Aunque no hubiese ratificado expresamente la gestión ajena, el dueño de bienes o negocios que aprovecha las ventajas de la misma será responsable de las obligaciones contraídas en su interés , . . . ."

Comentando dicho artículo, que es el equivalente al 1893 español, Manresa escribe:

"Es decir, que en el primer caso, en el de la ratificación expresa, es indiferente que la gestión haya producido o no ventajas; y desde luego se comprende, puesto que existe un acto manifiesto e indubitable de la voluntad del dueño aceptando la gestión y, por tanto, sus consecuencias. Pero en el caso de la aceptación tácita, para que se repute que ésta ha existido, es preciso que haya habido esas ventajas o beneficios, puesto que su aprovechamiento por parte del dueño es lo que constituye la presunción de la ratificación del mismo.

.    .    .    .    .    .    .    .

[S]i la gestión produce algún beneficio para el dueño, no sería justo que esta ventaja cediera en absoluto en favor de éste, sin que quedara sujeto a obligación alguna, ni aún siquiera a responder del reintegro de los gastos hechos y a la indemnización de los perjuicios sufridos por aquel a cuyos actos se debe el beneficio alcanzado o la ventaja obtenida, porque es un principio axiomático consignado, no sólo en el Código de las Partidas, sino hasta en la moral universal, 'que debe sentir el embargo de las cosas aquel que ha el pro de ellas.'

Por eso, cuando el dueño se aprovecha de las ventajas que proporcione la gestión ajena en sus negocios, se constituye en las mismas obligaciones que tendría si fuera mandante, aunque no haya ratificado expresamente la gestión, porque en otro caso

vendría a lucrarse injustamente de esas ventajas o de los beneficios producidos por los actos del gestor." [1]

Para fuentes anglosajonas puede verse Harper & James, *The Law of Torts*, Vol. 2 (1956) pág. 1478 y ss.; y Prosser, *Business, Visitors and Invitees*, Vol. 26, Minn. L. Rev. 573 (1942).

Puede verse la clara justificación económica y de justicia de la doctrina que comentamos. Es justo que quien recibe las ventajas o beneficios económicos de una actividad o negocio, generalmente hablando, también afronte la responsabilidad que pueda surgir. Considero sumamente injusto que, como en el caso de autos, además de los graves daños físicos y sicológicos que el menor sufrió, éste tenga también que absorber la perdida económica, cuando la verbena no se celebraba para su beneficio. La base de esta solución que ofrece el derecho jurisprudencial, así como también lo ofrece el Código Civil, es la equidad, sustancia y espíritu de todo el Derecho y la cual "propicia el desarrollo del derecho civil dentro de sí mismo."—*Silva* v. *Comisión Industrial*, 91 D.P.R. 891, 899 (1965).

Como bien señala Castán, "las ideas de justicia y equidad son esenciales y consustanciales a la noción del Derecho, el cual dejaría de cumplir sus finalidades morales y sociales si no aspirase a realizar la justicia...." [2]

Yo enmendaría la sentencia recurrida en el sentido de declarar la demanda con lugar también en cuanto a la codemandada.

---

[1] Manresa, *Código Civil Español*, Tomo 12, Sexta ed. rev. (1973), págs. 800 y 802. En la 5ta. ed., mismo tomo, págs. 606 y 608.

[2] *La Formulación Judicial del Derecho*, 2da. ed. rev. (1954), pág. 87.