Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| RICARDO TORRES COLÓN<br><br>*Recurrido*<br><br><br>v.<br><br><br>SERVICIOS MÉDICOS UNIVERSITARIOS, INC. H/N/C HOSPITAL UPR DR. FEDERICO TRILLA DE CAROLINA Y OTROS<br><br>**UNIVERSIDAD DE PUERTO RICO**<br><br>*Peticionaria* | KLCE202400268 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.: CA2022CV01681 (409)<br><br>Sobre: Daños y otros |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de abril de 2024.

Comparece ante nos la Universidad de Puerto Rico (UPR o peticionaria), mediante *Petición de Certiorari* y solicita la revisión de la *Resolución* emitida el 7 de diciembre de 2023, notificada el 11 de diciembre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Carolina. Mediante el aludido dictamen, el foro primario declaró No Ha Lugar una *Moción solicitando desestimación por falta de jurisdicción*, presentada por la peticionaria. El 26 de diciembre de 2023, la UPR presentó *Moción solicitando reconsideración*, más la misma fue denegada por el TPI mediante *Resolución* emitida el 31 de enero de 2024, notificada el 1 de febrero de 2024.

Por los fundamentos que exponemos a continuación, **expedimos** el auto de *certiorari* y **confirmamos** la determinación recurrida.

**I.**

El 28 de mayo de 2022, el señor Ricardo Torres Colón (señor Torres Colón o recurrido) presentó una *Demanda*[1] sobre daños y perjuicios por impericia médico-hospitalaria en contra del doctor José García García, su esposa y la sociedad legal de bienes gananciales compuesta por ambos (Dr. García García), el Centro de Diagnóstico y Tratamiento de Canóvanas h/n/c Canóvanas Medical Center (CDT de Canóvanas), Servicios Médicos Universitarios, Inc. h/n/c Hospital UPR Dr. Federico Trilla de Carolina (Hospital UPR), el Municipio de Canóvanas, ABC Corp, XYZ, SE, Sutano de Tal, DEF Insurance Company y GHI Insurance Company. Mediante esta, alegó haber sufrido daños como consecuencia de un diagnóstico erróneo.

En detalle, el recurrido adujo que el 6 de enero de 2021, acudió en dos ocasiones al CDT de Canóvanas experimentando dolor abdominal y en ambas instancias fue dado de alta con un diagnóstico de indigestión y gastritis. Al día siguiente el dolor se agudizó, por lo que acudió al Hospital UPR donde inicialmente le diagnosticaron una infección, para la cual le suministraron antibióticos. Mientras permanecía hospitalizado, fue diagnosticado con apéndice perforado y con un absceso contenido.

Consecuente a ello, el 13 de enero de 2021, el señor Torres Colón fue trasladado a otra institución hospitalaria en la que se le realizó una apendicectomía de intervalo y un drenaje del absceso. El mismo día regresó al Hospital UPR para continuar con su tratamiento. Luego, el 18 de enero de 2021, el Dr. García García le dio de alta con receta y con instrucciones de regresar en una fecha futura para llevar a cabo un sonograma. Conforme surge de la *Demanda,* el señor Torres Colón asistió a las citas de seguimiento

---

[1] Apéndice del recurso, págs. 1-7.

con el Dr. García García durante los meses de enero, febrero y marzo.

Posteriormente, el 30 de mayo de 2021, este fue transportado en ambulancia al CDT de Canóvanas luego de sufrir un episodio sincopal. Tras ser evaluado, el mismo fue trasladado a otro centro hospitalario en el que finalmente le revelaron que sufría de apendicitis, apendicolito, fluido periappendiceal y sepsis. Ante ello, el 31 de mayo de 2021 fue intervenido de emergencia para remover el apéndice y nuevamente, drenar el absceso.

A tenor con todo lo anterior, el recurrido le imputó negligencia al CDT de Canóvanas: (i) por no haber llevado a cabo un examen físico completo y por consiguiente, brindar un diagnóstico erróneo y, (ii) por haberlo dado de alta aun cuando el dolor persistía, lo que provocó que regresara ese mismo día al hospital. Añadió que la negligencia del CDT y sus médicos ocasionó que se perforara su apéndice y desarrollara el absceso. Por otro lado, el señor Torres Colón sostuvo que el Hospital UPR y el Dr. García García incurrieron en negligencia al no pautar una apendicectomía en el periodo de tiempo correspondiente, luego de realizarle la apendicectomía de intervalo. Sostuvo que ello provocó infección, sepsis, episodios de síncope, dolor y una operación de emergencia. Por todo lo anterior, el señor Torres Colón reclamó una suma total de $600,000.00.

Tras varias incidencias procesales, el 10 de noviembre de 2022 el recurrido incoó *Demanda Enmendada*[2] para incluir como codemandados a los doctores Fabián Aurignac y Gilberto Encarnación, quienes lo atendieron en el CDT de Canóvanas. La enmienda fue autorizada por el foro de instancia el 15 de noviembre de 2022[3].

---

[2] *Íd.*, págs. 20-26.
[3] Véase entrada número 29 del expediente electrónico en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

Luego de otros varios trámites procesales, el 10 de mayo de 2023 el señor Torres Colón presentó *Moción sometiendo emplazamientos diligenciados y solicitando anotación de rebeldía al Dr. José García*[4]. En lo pertinente, expresó que el Dr. García García había sido emplazado el 10 de agosto de 2022 y el mismo no compareció dentro del término dispuesto en las Reglas de Procedimiento Civil. Por ello, solicitó la anotación de rebeldía al Dr. García García.

Días más tarde, el 16 de mayo de 2023, el señor Torres Colón presentó *Moción solicitando autorización para presentar segunda demanda enmendada*[5] junto a una *Segunda Demanda Enmendada*[6]. En virtud de la primera, arguyó que en esa misma fecha había recibido una llamada de la UPR en la que se le indicó que el Dr. García García era facultativo de dicha institución. En vista de ello, y a tenor con la inmunidad estatuida en el Código de Seguros[7] para con el Dr. García García, el recurrido solicitó autorización para incluir a la UPR como patrono de este y en sustitución del mismo. Además, retiró la solicitud de anotación de rebeldía previamente presentada.

El 30 de julio de 2023, compareció la UPR sin someterse a la jurisdicción, mediante una *Moción solicitando desestimación a tenor con la regla 10.2 de las de Procedimiento Civil*[8]. En esta, alegó insuficiencia del emplazamiento y su diligenciamiento.

---

[4] Véase entrada número 81 del expediente electrónico en el SUMAC.

[5] Apéndice del recurso, págs. 27-29.

[6] *Íd.*, págs. 30-36.

[7] El Código de Seguros de Puerto Rico, Ley Núm. 77 de 19 de junio de 1957, dispone como sigue en su artículo 41.050:

> Ningún profesional de la salud (empleado o contratista) podrá ser incluido como parte demandada en una acción civil de reclamación de daños por culpa o negligencia por impericia profesional (*"malpractice"*) causada en el desempeño de su profesión, mientras dicho profesional actúe en cumplimiento de sus deberes y funciones, incluidas las docentes, como empleados del Estado Libre Asociado de Puerto Rico, sus dependencias, instrumentalidades, el Centro Comprensivo de Cáncer de la Universidad de Puerto Rico y los municipios. 26 LPRA sec. 4105.

[8] Apéndice del recurso, págs. 37-41.

Subsiguientemente, el 24 de agosto de 2023, el señor Torres Colón presentó *Oposición a "Solicitud de desestimación" a tenor con la regla 10.2 de las de Procedimiento Civil*[9].

Previo a la presentación de la referida oposición, el foro primario emitió una *Sentencia Parcial*[10] en la que, en lo pertinente al asunto que nos ocupa, determinó que la solicitud de desestimación no procedía puesto que aún no había transcurrido el periodo de ciento veinte (120) días para emplazar a la peticionaria[11]. A esos efectos, el TPI ordenó el emplazamiento de la UPR, de conformidad con la Regla 4.4(e) de las de Procedimiento Civil[12].

Así las cosas, el 11 de octubre de 2023 la UPR presentó *Moción solicitando desestimación por falta de jurisdicción*[13]. Alegó que la causa de acción en su contra estaba prescrita. En detalle, sostuvo que no había sido incluida en la *Demanda* sino hasta el 16 de mayo de 2023, fecha para la cual ya había transcurrido el término prescriptivo de un (1) año, establecido para exigir responsabilidad extracontractual. Expresó además que, contrario a las alegaciones del recurrido, el término prescriptivo no había quedado interrumpido por este haber incluido varios demandados desconocidos en la demanda. Aseguró que la información de que el Dr. García García era empleado de la UPR era de fácil corroboración, y que el recurrido no demostró que algo fuera de su control le hubiese impedido actuar dentro del término establecido por ley. En consonancia, adujo que las alegaciones relacionadas a dichos nombres desconocidos carecían de la especificidad que requiere la Regla 15.4 de las de Procedimiento Civil[14].

---

[9] *Íd.*, págs. 64-72.
[10] *Íd.*, págs. 42-63.
[11] Hacemos constar que el 17 de agosto de 2023, el foro de instancia concedió un término de veinte (20) días al recurrido para que replicara la moción dispositiva. Dicho periodo culminaba el 7 de septiembre de 2023, es decir, posterior a la fecha en que el TPI resolvió la referida moción.
[12] El emplazamiento fue diligenciado el 29 de agosto de 2023. Véase entrada número 107 del expediente electrónico en el SUMAC.
[13] Apéndice del recurso, págs. 73-82.
[14] La referida regla dicta como sigue:

El 7 de diciembre de 2023, el señor Torres Colón presentó *Oposición a "Moción solicitando desestimación por falta de jurisdicción" de la Universidad de Puerto Rico*[15]. En apretada síntesis, arguyó dos (2) razones por las cuales entendía que la causa de acción contra la peticionaria no estaba prescrita. En primer lugar, sostuvo que fue el 15 de mayo de 2023 cuando advino en conocimiento de que la UPR era el patrono del Dr. García García, y la segunda demanda enmendada se presentó al próximo día, entiéndase, el 16 de mayo de 2023. Abundó que la fecha en que se enteró de lo anterior era precisamente la fecha a partir de la cual comenzaba a transcurrir el término prescriptivo para entablar una causa de acción contra la UPR.

En segundo lugar, manifestó que entre el Dr. García García y la peticionaria, como empleado y patrono respectivamente, existía una relación de solidaridad perfecta. Ello, a la par con el estado de derecho vigente, suponía sin más que la radicación de la demanda contra el Dr. García García había interrumpido el término prescriptivo contra la UPR.

En la misma fecha, y notificada el 11 de diciembre de 2023, el foro de instancia emitió *Resolución*[16], mediante la cual declaró No Ha Lugar la moción dispositiva.

En desacuerdo, el 26 de diciembre de 2023, la UPR presentó *Moción solicitando reconsideración*[17]. Puntualizó que el recurrido conocía desde la presentación de la *Demanda* original que el Dr. García García era empleado de la UPR, y voluntariamente decidió no

---

Cuando una parte demandante ignore el verdadero nombre de una parte demandada deberá hacer constar este hecho en la demanda exponiendo la reclamación específica que alega tener contra dicha parte demandada. En tal caso, la parte demandante podrá designar con un nombre ficticio a dicha parte demandada en cualquier alegación o procedimiento, y al descubrirse el verdadero nombre, hará con toda prontitud la enmienda correspondiente en la alegación procedimiento. 4 LPRA Ap. V, R. 15.4.

[15] Apéndice del recurso, págs. 83-93.
[16] *Íd.*, pág. 94.
[17] *Íd.*, págs. 95-102.

incluir a esta última como patrono. Específicamente, sostuvo que el recurrido alegó en la *Demanda* original que al momento de los hechos el Dr. García García era empleado o contratista independiente del Hospital UPR. Manifestó que ello era contrario al planteamiento del recurrido, en cuanto a que no fue hasta el 15 de mayo de 2023 que advino en conocimiento sobre quién era el patrono del Dr. García García.

De otra parte, sostuvo que la argumentación del recurrido sobre la solidaridad propia entre el Dr. García García y la UPR era improcedente en derecho, toda vez que el galeno estaba cobijado por la inmunidad estatutaria que provee el Código de Seguros, por lo que no era solidariamente responsable.

El 9 de enero de 2024 y notificada el 11 de enero de 2024, el tribunal primario dictó *Orden*[18] concediendo un término de veinte (20) días al recurrido para que se expresara en cuanto a la referida solicitud. En cumplimiento, el 30 de enero de 2024, el señor Torres Colón incoó *Oposición a "Moción solicitando reconsideración"*[19]. En virtud de esta, arguyó que en ningún momento alegó que el Dr. García García era empleado de la peticionaria, y que esta última confundía la UPR con Servicios Médicos Universitarios, Inc., entidad que operaba el hospital. Manifestó que se trataba de dos entidades distintas y que los médicos que atendían pacientes en el Hospital UPR no necesariamente eran empleados de la UPR.

Añadió además, que no era posible conocer previamente que el Dr. García García era empleado de la UPR, puesto que este nunca compareció a pesar de haber sido emplazado. De otro lado, expresó que la inmunidad que cobijaba al Dr. García García no impedía que entre éste y la UPR hubiese una relación de solidaridad perfecta. Abundó que dicha solidaridad surgía precisamente por ser el Dr.

---

[18] *Íd.*, pág. 103.
[19] *Íd.*, págs. 104-110.

García García empleado de la peticionaria. Específicamente sostuvo que: "el propio Código de Seguros, al otorgar inmunidad al médico empleado de un hospital, presume que existe solidaridad perfecta toda vez que responsabiliza al Hospital de sus actos y omisiones y aplica el límite estatutario para reclamaciones en contra del estado"[20].

Finalmente, reiteró que la causa de acción comenzó a decursar al momento en que la UPR le sometió una certificación que establecía que el Dr. García García era su empleado, esto es, el 15 de mayo de 2023. Asimismo, subrayó que el término prescriptivo para ir contra la UPR quedó interrumpido al radicar la *Demanda* original, por haberse incluido en esta al Dr. García García.

El 31 de enero de 2024, el TPI emitió *Resolución*[21], en la que declaró No Ha Lugar la solicitud de reconsideración presentada por la UPR.

Aun en desacuerdo, el 4 de marzo de 2024, la UPR acudió ante nos mediante la petición de *certiorari* que nos ocupa y planteó el siguiente señalamiento de error:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE LA CAUSA DE ACCIÓN DE LA PARTE DEMANDANTE NO ESTABA PRESCRITA.

El 21 de marzo de 2024, el señor Torres Colón compareció mediante *Oposición a petición de certiorari*. Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

### -A-

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior[22]. La determinación de

---

[20] *Íd.*, pág. 107.
[21] *Íd.*, pág. 111.
[22] Véase *Torres González v Zaragoza Meléndez*, 211 DPR 821 (2023); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al. v. BBVAPR*, 185 DPR 307,

expedir o denegar este tipo de recurso se encuentra enmarcada dentro de la discreción judicial[23]. De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera"[24]. Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho"[25].

Con el fin de que podamos ejercer de forma sabia y prudente nuestra facultad discrecional de entender o no en los méritos de los asuntos que nos son planteados mediante el recurso de *certiorari*, la Regla 40 del Reglamento del Tribunal de Apelaciones[26], señala los criterios que para ello debemos considerar. Éstos son:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Un *certiorari* solo habrá de expedirse si al menos uno de estos criterios aconseja la revisión del dictamen recurrido. Es decir, el ordenamiento impone que ejerzamos nuestra discreción y evaluemos si, a la luz de alguno de los criterios contenidos en la

---

337-338 (2012); *García v. Padró*, 165 DPR 324, 334-335 (2005); *Negrón v. Srio. de Justicia*, 154 DPR 79, 90-92 (2001).

[23] *Íd.*

[24] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2014); *Negrón v. Srio. de Justicia, supra*, pág. 91.

[25] *Íd.*

[26] 4 LPRA XXII-B, R. 40.

misma, se requiere nuestra intervención.

**-B-**

Nuestro ordenamiento jurídico dispone que la persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo[27]. Para que prospere una reclamación por daños y perjuicios al amparo del Artículo 1536, *supra*, el demandante tiene que demostrar la concurrencia de los siguientes elementos: (1) el acto o la omisión culposa o negligente; (2) la relación causal entre el acto o la omisión culposa o negligente y el daño ocasionado; y, (3) el daño real causado al reclamante.

Añade el Artículo 1163 del Código Civil 2020:

La culpa o negligencia del deudor consiste en la omisión de aquella diligencia que exige la naturaleza de la obligación y corresponde a las circunstancias de las personas, del tiempo y del lugar.

Cuando la obligación no expresa la diligencia que debe prestarse en su cumplimiento, se exige la que corresponde a una persona prudente y razonable.

La responsabilidad que procede de la negligencia es exigible en el cumplimiento de toda clase de obligaciones, pero los tribunales, según los casos, pueden moderarla[28].

**-C-**

De ordinario, en nuestro ordenamiento jurídico la obligación de reparar daños dimana de un hecho propio[29]. A modo de excepción, el Código Civil de Puerto Rico identifica varias instancias en las que ciertas personas vienen llamadas a responder por hechos ajenos[30]. En lo pertinente al caso de autos, el Artículo 1504[31] del referido cuerpo legal dispone en su inciso (d), que "los patronos públicos o privados [responden], por los daños que causan sus empleados en el servicio de las ramas en que los tengan empleados

---

[27] Art. 1536 del Código Civil 2020, 31 LPRA sec. 10801, equivalente al Art. 1802 del Código Civil de 1930, 31 LPRA ant. sec. 5141. Véase también, *Mena Pamias v. Jiménez Meléndez*, 212 DPR 758 (2023); *Nieves Díaz v. González Massas*, 178 DPR 820, 843 (2010).
[28] 31 LPRA sec. 9315.
[29] *Hernández Vélez v. Televicentro*, 168 DPR 803, 814 (2006); *Vélez Colón v. Iglesia Católica*, 105 DPR 123, 127 (1976).
[30] *Cruz Flores v. Hospital Ryder Memorial Inc.*, 210 DPR 465, 485 (2022).
[31] 31 LPRA sec. 10805. El referido artículo es equivalente al Art. 1803 del Código Civil de 1930, 31 LPRA ant. sec. 5142.

o con ocasión de sus funciones"[32]. Dicho de otro modo, un patrono responde extracontractualmente por los actos u omisiones de sus empleados, en tanto y en cuanto estos hayan actuado dentro del marco de sus atribuciones o funciones[33].

**-D-**

La prescripción es una institución de derecho sustantivo que se rige por las disposiciones del Código Civil y constituye una forma de extinción de un determinado derecho debido a la inercia de la relación jurídica durante un periodo de tiempo determinado. El transcurso del periodo de tiempo establecido por ley sin que el titular del derecho lo reclame da lugar a la presunción legal de abandono de éste, lo que en conjunto con la exigencia que informa el ordenamiento jurídico para eliminar la incertidumbre de las relaciones jurídicas, constituyen los fundamentos básicos de la prescripción extintiva[34].

En el caso particular de las acciones al amparo del Artículo 1536, *supra,* **estas prescriben por el transcurso de un (1) año, contado desde que la persona agraviada conoce la existencia del daño y quien lo causó**[35]. (Énfasis nuestro). En otras palabras, se podrá ejercitar una acción en daños dentro del año a partir de la fecha en que el perjudicado conoció o debió conocer que sufrió un daño, quien fue el autor, y desde que este conoce los elementos necesarios para poder ejercitar efectivamente su causa de acción[36].

Es norma reiterada que los términos prescriptivos son susceptibles de interrupción. El Artículo 1197 del Código Civil de 2020[37], establece que la prescripción se interrumpe mediante la

---

[32] *Íd.*

[33] *Hernández Vélez v. Televicentro, supra,* pág. 815; *González v. Compañía Agrícola,* 76 DPR 398, 401 (1954).

[34] *Melendez v. El Vocero de Puerto Rico,* 144 DPR 389, 394 (1997), citando a *García Aponte et al. v. ELA et al.,* 135 DPR 137, 142-143 (1994).

[35] 31 LPRA sec. 9496, equivalente al Artículo 1868 del Código Civil de 1930, 31 LPRA ant. sec. 5298.

[36] *Fraguada Bonilla v. Hosp. Aux. Mutuo,* 186 DPR 365, 374 (2012).

[37] 31 LPRA sec. 9489, equivalente al Artículo 1873 del Código Civil de 1930, 31 LPRA ant. sec. 5303.

presentación de la demanda judicial o de la reclamación administrativa o arbitral, por reclamación extrajudicial o por el reconocimiento de la obligación por el deudor[38]. El término prescriptivo se entiende interrumpido "cuando el titular del derecho lleva a cabo gestiones que demuestran su interés en reclamar su acreencia"[39].

**-E-**

El antiguo Código Civil de Puerto Rico nada disponía en cuanto a si las obligaciones civiles extracontractuales habían de entenderse solidarias o mancomunadas. Ante ello, jurisprudencialmente se había resuelto que las mismas eran solidarias. Dicha norma fue entonces integrada en el nuevo Código Civil de 2020, a través del artículo 1539[40], el cual expresamente dispone que "cuando varias personas causan daños por actos independientes de culpa o negligencia, la responsabilidad frente al perjudicado es solidaria sin perjuicio del derecho de nivelación entre los cocausantes"[41].

Dicha solidaridad, se distingue entre *propia o perfecta* e *impropia o imperfecta.* La referida distinción fue realizada por nuestra más alta *Curia* en *Fraguada Bonilla v. Hosp. Aux. Mutuo,* en donde se expresó que la *solidaridad perfecta* es aquella pactada o de vínculo preexistente, mientras que la imperfecta es la que surge cuando son varios los responsables de un daño extracontractual[42]. Dicha distinción reconoció que, en los casos sobre solidaridad imperfecta existen efectos primarios y secundarios. En lo que respecta a los efectos secundarios, como lo es la prescripción, nuestro máximo Foro dispuso que el perjudicado viene obligado a interrumpir el plazo con cada uno de los cocausantes del daño,

---

[38] *Íd.*
[39] *Meléndez Guzmán v. Berríos López,* 172 DPR 1010, 1019 (2008).
[40] 31 LPRA sec. 10804.
[41] *Íd.*
[42] *Fraguada Bonilla v. Hosp. Aux. Mutuo,* 186 DPR 365, 380 (2012).

dentro del plazo establecido por ley, pues de lo contrario su acción extrajudicial se tornará prescrita respecto a esos copartícipes[43].

Más recientemente, el Tribunal Supremo precisó que dicha norma no se extiende a instancias en las que opera la responsabilidad vicaria codificada en el Artículo 1540 del nuevo Código Civil de 2020, antiguo Artículo 1803, *supra*. En *Pérez et al. v. Lares Medical et al.*, 207 DPR 965 (2021), el más Alto Foro resolvió que entre un patrono y su empleado existe una relación de solidaridad propia, distinta a la solidaridad impropia que ordinariamente existe entre los cocausantes de un daño extracontractual. En lo específico, el Tribunal Supremo resolvió como sigue:

> El régimen de responsabilidad presunta por hechos ajenos se fundamenta en la existencia de una relación de dependencia previa entre el patrono y su empleado donde el empleado, en el desempeño de su oficio, actúa para adelantar los intereses de su patrono. Es decir, ambos cocausantes están inexorablemente atados por un interés común y tienen entre sí relaciones frecuentes. No existe, por tanto, la ausencia de comunidad de intereses que justificó la adopción de la doctrina de solidaridad impropia en el ámbito extracontractual en *Fraguada Bonilla v. Hosp. Aux. Mutuo*, supra, según el Art. 1802, *supra*. Por el contrario, *al interpretar conjuntamente los Arts. 1803 y 1804 del Código Civil, supra, la conclusión más lógica es que la responsabilidad que surja entre el patrono y el empleado sea solidaria, mas en su vertiente propia.*
>
> [. . .]
>
> [*A*]*l resolver que los Arts. 1803 y 1804 del Código Civil*, supra, *establecen una relación solidaria entre un patrono y su empleado, esa norma de solidaridad en realidad es una impuesta por ley. Por consiguiente, también rigen los efectos secundarios de la solidaridad propia codificados en el Art. [1874]*, supra.
>
> (Énfasis en el original)[44].

El Artículo 1104[45] del nuevo Código Civil de 2020, análogo al Artículo 1874[46] del antiguo Código Civil de 1930, dicta que "**la interrupción de la prescripción de las acciones en las**

---

[43] *Íd.*, pág. 389.
[44] *Pérez et al. v. Lares Medical et al.*, 207 DPR 965, 990 (2021).
[45] 31 LPRA sec. 9063.
[46] 31 LPRA ant. sec. 5304.

**obligaciones solidarias aprovecha o perjudica por igual a todos los acreedores y deudores**, excepto en las obligaciones extracontractuales cuando concurren varios causantes de un daño." (Énfasis nuestro). De modo que, **los actos que se lleven a cabo contra el patrono o el empleado, con el propósito de interrumpir el término prescriptivo, perjudican a ambos por igual**[47].

### III.

En el caso ante nos, la peticionaria solicita la revisión de la *Resolución* emitida el 7 de diciembre de 2023, notificada el 11 de diciembre de 2023, por el TPI, mediante la cual declaró No Ha Lugar una solicitud de desestimación por falta de jurisdicción presentada por la UPR. Específicamente, alega en su único señalamiento de error que, el foro primario incidió al determinar que la causa de acción en su contra no estaba prescrita. Razona que el TPI erró al no aplicar la normativa jurisprudencial determinada por nuestro Tribunal Supremo en *Fraguada Bonilla v. Hosp. Aux. Mutuo, supra*, por lo que sostuvo que el perjudicado viene obligado a interrumpir la prescripción con cada uno de los cocausantes del daño, dentro del término de un (1) año, pues de lo contrario su acción se tornará prescrita respecto a esos copartícipes.

Por su parte, el recurrido asegura que aplica la normativa establecida en *Pérez et al. v. Lares Medical et al., supra*. Asimismo, aduce que al presentar la demanda original desconocía que el Dr. García García era empleado de la peticionaria. Sobre ello, esboza que el 15 de mayo de 2023, a través de una certificación emitida por la peticionaria, advino en conocimiento de la relación patrono-empleado entre la UPR y el Dr. García García. Veamos.

Surge del expediente apelativo que la demanda original se presentó el 28 de mayo de 2022 y en la misma se incluyó al Dr.

---

[47] *Pérez et al. v. Lares Medical et al., supra*.

García García como parte codemandada. Al presentarse la demanda original se diligenció el emplazamiento del galeno dentro del término provisto por las Reglas de Procedimiento Civil. Además, no hay controversia de que existe una relación laboral ente la UPR y el Dr. García García. Ante esta situación de hechos, resta aplicar la normativa jurisprudencial determinada por nuestro Tribunal Supremo en *Pérez et al. v. Lares Medical et al.*, *supra*. Conforme a nuestra Alta Curia:

> *[L]a doctrina de solidaridad, en su vertiente **impropia**, según adoptada en Fraguada Bonilla v. Hosp. Aux. Mutuo*, supra, *es inaplicable al régimen de responsabilidad presunta de los patronos por los actos de sus empleados según el Art. 1803.*[48] (Énfasis en el original)

Además, en cuanto a la relación solidaria entre un patrono y su empleado, muy claramente establece que:

> En esta ocasión, *al resolver que los Arts. 1803 y 1804 del Código Civil,* supra, *establecen una relación solidaria entre un patrono y su empleado, esa norma de solidaridad en realidad es una impuesta por ley. Por consiguiente, también rigen los efectos secundarios de la solidaridad propia codificados en el Art. 1091,* supra. Es decir, "[l]a interrupción de la prescripción aprovecha o perjudica por igual a todos los acreedores y deudores". En lo pertinente a nuestra controversia, *los actos interruptivos del término prescriptivo realizados contra el patrono o el empleado perjudican al otro por igual.*[49] (Énfasis en el original)

Así pues, colegimos que en el presente caso, ante la relación laboral entre el Dr. García García y la UPR, el término prescriptivo fue debidamente interrumpido cuando se presentó la demanda original. Por lo tanto, no procede como cuestión de derecho la moción instada por la peticionaria y el error no fue cometido.

En suma, la UPR no ha demostrado que el foro recurrido haya actuado de forma prejuiciada o parcializada, o que cometiera un error en la aplicación de la norma jurídica que amerite nuestra intervención en esta etapa de los procedimientos. Por consiguiente, expedimos el auto de *certiorari* y confirmamos la *Resolución* recurrida.

---

[48] *Pérez et al. v. Lares Medical et al.*, *supra*, pág. 988.
[49] *Íd.,* pág. 990.

16

**IV.**

En mérito de lo anterior, **expedimos** el auto de *certiorari* y **confirmamos** la determinación recurrida.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones