ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| ORIENTAL BANK<br><br>Parte Recurrida<br><br><br>v.<br><br><br>GLORIA HAYDEE TIRADO MIRANDA H/N/C GLO SPA HEALTH & BEAUTY<br><br>Parte Recurrida<br><br>v.<br><br>PAULA GUADALUPE PAGÁN, Y OTROS<br><br>Parte Peticionaria | KLCE202301259 | *Certiorari,*<br>procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br><br>Caso Núm.:<br>BY2022CV06198<br><br><br>Sobre:<br>Cobro de Dinero y Ejecución de Hipoteca y Prenda |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de noviembre de 2023.

Compareció ante este Tribunal la parte peticionaria, Paula Guadalupe, Gerente de la Sucursal de Oriental Bank (en adelante, "Guadalupe"), y Maritza Montalvo Santiago, Suscriptora de Préstamos de Oriental Bank (en adelante, "Montalvo") (en adelante y en conjunto, las "Peticionarias"), mediante petición de *certiorari* presentada el 13 de noviembre de 2023. Nos solicitaron la revocación de la *Resolución y Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, el "TPI"), el 28 de agosto de 2023, notificada y archivada en autos el mismo día.

Por los fundamentos que expondremos a continuación, se *expide* el auto de *certiorari* solicitado y se *confirma* el dictamen recurrido.

**I.**

El presente caso tiene su origen el 5 de diciembre de 2022, fecha en que Oriental Bank (en adelante, "Oriental") presentó una "**Demanda**" de

cobro de dinero y ejecución de hipoteca y prenda en contra de la parte recurrida, Gloria Haydee Tirado Miranda h/n/c Glo Spa Health & Beauty (en adelante, "Tirado" o "Recurrida"). Alegó que el 22 de julio de 2022 Tirado solicitó y obtuvo un préstamo por la cantidad de $101,100.00, suscrito bajo el affidavit número 45729 ante el Notario Público Ernesto A. Meléndez Pérez. Asimismo, expuso que la Recurrida garantizó los pagos mediante un pagaré hipotecario por la cantidad de $101,100.00 de principal, a favor de Oriental fechado a 22 de julio de 2022 bajo afidávit número 45728 ante el mismo notario público. De igual forma, planteó que, para garantizar el aludido pagaré, Tirado otorgó la Escritura de Hipoteca Núm. 33 de 22 de julio de 2022 por la cantidad del principal antes mencionada sobre cierto bien inmueble sito en la Urbanización Santa Juanita en el Municipio de Bayamón.

Aseveró que ese mismo día la Recurrida suscribió un Contrato de Prenda y Gravamen Mobiliario mediante el cual entregó en prenda el pagaré hipotecario antes identificado al igual que los intereses, dineros y productos que generara dicho pagaré y la propiedad que lo garantiza. También Tirado suscribió un Acuerdo de Garantía Mobiliaria (Póliza de Seguro de Vida) mediante el cual cedió a Oriental la póliza de seguros de vida número T400427930, expedida por Lincoln National Life Insurance. Dicho documento fue suscrito ante el Notario Ernesto A. Meléndez Pérez, affidavit núm. 45731. Expresó que el préstamo fue dejado de pagar, por lo que Oriental procedió a acelerar la deuda y sostuvo que la misma estaba vencida y era líquida y exigible.

A esos efectos, expresó que a la fecha de la presentación de la "**Demanda**" la Recurrida adeudaba las siguientes cantidades: $101,100.00 de principal, más la suma de $3,266.00 de intereses acumulados hasta el 5 de diciembre de 2022, más los que continúen acumulándose hasta el pago total y completo de la deuda, más la suma de $230.20 de cargos por mora, más $5,055.00 de otros cargos, más $10,110.00 por concepto de honorarios de abogados pactados. Por tanto, solicitó que una vez el TPI emitiera dictamen final y firme, sin que Tirado hubiera satisfecho la aludida deuda, se ordenara la ejecución de la propiedad dada en garantía.

El 31 de marzo de 2023, la Recurrida presentó "**Contestación a Demanda**". Reconoció que firmó ciertos documentos para obtener ciertas garantías como parte del trámite conducente a obtener una facilidad de crédito. Asimismo, alegó afirmativamente que los pagos estaban condicionados a los ingresos a recibirse por la operación del negocio Glo Spa Health & Beauty (en adelante, el "negocio"). Añadió que ello se vio gravemente afectado debido a la negligencia, fraude y dolo cometido por Oriental al otorgar el préstamo comercial en controversia conociendo la zonificación de la propiedad y a la orientación que recibiera a los efectos de que era suficiente solicitar un permiso de uso para que el negocio pudiera operar.

Ese mismo día, Tirado presentó una "**Reconvención**" mediante la cual sostuvo que, como parte de los planes de abrir el negocio, solicitó una cualificación para un préstamo comercial con Oriental para la compraventa de la propiedad inmueble anteriormente descrita. Alegó que fue orientada por Guadalupe sobre la documentación requerida para la solicitud de la línea de crédito que, en su caso, al ser para un propósito comercial, entre otras cosas, incluía la presentación de un Plan de Negocios. Aseveró que Oriental la refirió a la atención de la Sra. María C. Rodríguez, Consultora de Negocios de la *Small Business Administration* (SBS, por sus siglas en inglés), puesto que dicha entidad estaría garantizando el préstamo solicitado.

Asimismo, esbozó que Oriental y los terceros que intervinieron en los negocios de compraventa e hipoteca conocían que el pago del préstamo se realizaría con las ganancias que Tirado obtuviera de la operación del negocio. Expresó que el 6 de julio de 2022 advino en conocimiento de la zonificación de la propiedad y le cuestionó a cierta representante de Oriental y a la corredora de bienes raíces si ello afectaría la apertura y operación del negocio. Sobre el particular, esgrimió que los representantes de Oriental y ciertos terceros le indicaron que ello no representaba un impedimento para la operación del negocio, toda vez que lo único que necesitaba era iniciar el trámite en el Municipio de Bayamón para obtener el permiso de uso comercial. Sostuvo que dicha orientación se alejaba de las exigencias de la

profesión de todo profesional prudente y razonable, puesto que era sabido por los representantes de Oriental, el vendedor y la corredora de bienes raíces que la solicitud de permiso de uso comercial no implicaba un cambio en la zonificación de una propiedad.

Además, consignó que Oriental no paralizó el cierre al contar con evidencia de que el negocio no era viable al uso propuesto de la propiedad para la cual se solicitó el préstamo comercial fundamentado en que la institución bancaria, por conducto de sus representantes, tenían un deber de analizar la documentación en todo proceso hipotecario y dar las debidas recomendaciones y advertencias a los otros representantes de Oriental para tomar determinaciones correctas y adecuadas. Expuso que Oriental otorgó una línea de crédito para actividades comerciales, a sabiendas de que los pagos estaban condicionados a los ingresos a recibirse por la operación del negocio. Le imputó a Oriental haberse enriquecido injustamente al realizar un préstamo hipotecario comercial sobre una propiedad inmueble ubicada en una zona urbana y que, por tanto, el consentimiento de Tirado al suscribir la línea de crédito estaba viciado, ya que, si dicha circunstancia la hubiera conocido de antemano, no hubiera llevado a cabo la compraventa ni solicitado la línea de crédito. A tono con lo anterior, reclamó que el causante del impago fue Oriental, puesto que cometió fraude junto con los terceros que intervinieron en las negociaciones que culminaron con el otorgamiento del préstamo.

A base todo lo anterior, incorporó las siguientes causas de acción: (1) vicios de voluntad, (2) enriquecimiento sin causa y (3) responsabilidad civil extracontractual. Estimó sus daños por sufrimientos y angustias mentales en $500,000.00, una cuantía ascendente a $150,000.00 por los gastos y arreglos invertidos en el bien inmueble y gastos de cierre, la cantidad de $200,000.00 por pérdida de ingresos operaciones del negocio y $5,000.00 por concepto de gastos del litigio.

Varios días más tarde, Tirado presentó "**Demanda contra Terceros**" en la que acumuló como terceras demandadas a las Peticionarias. En lo que a ellas respecta, reiteró que Guadalupe la orientó sobre toda la documentación requerida para la solicitud de la línea de crédito que, en su

caso, al ser para un propósito comercial, entre otras cosas, incluía la presentación de un Plan de Negocios y que ésta la refirió a ser orientada a la SBS para que le asistieran con el proceso, toda vez que el préstamo estaría garantizado por dicha entidad federal. Además, añadió que Oriental, por conducto de Guadalupe, contrató los servicios del tasador, Sr. José C. Méndez, quien realizó una tasación estrictamente comercial sobre la propiedad en controversia. Asimismo, esgrimió que Guadalupe se tardó en remitirle la tasación practicada al inmueble y que al examinar la misma advino en conocimiento de la zonificación de éste. Añadió que al percatarse de este particular se comunicó con Guadalupe para solicitarle orientación y cuestionó si ello afectaría la operación del negocio, lo cual esta última presuntamente le expresó que no confrontaría problemas, pues requería de un simple trámite en el Municipio de Bayamón para solicitar un permiso de uso comercial. Argumentó que Guadalupe le informó que Oriental le otorgaría un periodo de gracia para que pudiera realizar dichas gestiones y que no tendría que realizar pago alguno durante el mismo.

Además, aseveró que el 5 de julio de 2022 le remitió a Guadalupe un mensaje de texto en el que le indicó su intención de no continuar con el proceso de compraventa y constitución de hipoteca, ya que no se sentía segura por unos cambios a la aportación original del préstamo. Aseguró que Guadalupe la persuadió en todo momento para que continuara con el proceso, a pesar de sus dudas e inseguridades en cuanto al mismo, y continuó brindándole una deficiente orientación, mediante procesos fraudulentos y viciando la voluntad de la Recurrida para que continuara los procesos y se diera el cierre apresurado del negocio con Oriental. A esos fines, argumentó que Guadalupe tuvo oportunidad para orientarla sobre la zonificación de la propiedad y el proceso correcto para que el negocio pudiera operar. Expuso que el cierre del negocio fue atropellado, puesto que Guadalupe actuó con prisa e hizo que Tirado firmara los documentos sin leerlos. Sobre esto último, alegó que el trámite sobre el cambio de uso de la propiedad fue denegado.

Así pues, añadió que la corredora de bienes raíces le remitió un correo electrónico en el que expresó que Oriental había sido negligente con

su caso y le indicó lo siguiente: "Yo le había preguntado a [Guadalupe] sobre los permisos de uso cuando se inició el caso a principios de año y ella me indicó que los permisos de uso se solicitaban a lo último. Yo no trabajo en banca comercial lamentablemente no sé cómo es el proceso, pero esto es negligencia del banco".[1] Sostuvo que reclamó a Guadalupe y que éste le refirió unos números de teléfonos de unas gestoras para que se orientara sobre la situación de la zonificación del inmueble.

Por otro lado, le imputó a Montalvo tener el ineludible deber de analizar toda la documentación del proceso hipotecario que se estaba llevando a cabo con la Recurrida y, a su vez, un deber de paralizar y/o detener el cierre del mismo, al contar con evidencia de que el negocio no era viable al uso propuesto de la propiedad para la cual se estaba solicitando el préstamo comercial. Planteó que Montalvo tenía el deber de analizar y dar las debidas recomendaciones y/o advertencias a Guadalupe para tomar determinaciones correctas y adecuadas que no tuviesen consecuencias adversas para las partes en el negocio jurídico realizado.

Finalmente, reclamó que todos los terceros demandados se enriquecieron injustamente al realizar el negocio, ya que conocían que la solicitud de permiso de uso comercial no implicaba un cambio de zonificación. Asimismo, acumuló el planteamiento sobre el vicio en el consentimiento y esgrimió las mismas causas de acción expuestas en la "**Reconvención**", así como los mismos daños y por los mismos conceptos esbozados en esta última.

Luego de transcurridos varios trámites procesales, el 31 de mayo de 2023, las Peticionarias presentaron ante el TPI una "**Moción de Desestimación Parcial**". Mediante la misma, sostuvieron que no existía una sola alegación dirigida a éstas en la que se expusiera un hecho específico y particular por el cual debían responder en su carácter personal. Expresó que no figuraban alegaciones en su contra, puesto que no existía una relación fuera del alcance de las funciones como empleadas de Oriental. Articuló que Oriental era parte demandante en el caso y que Tirado

---

[1] *Véase*, Apéndice del recurso, pág. 160.

promovió una "**Reconvención**" por los mismos hechos que esboza en su "**Demanda contra Tercero**" dirigida en contra de las Peticionarias por actos realizados en ocasión de sus funciones. A la luz de lo anterior, fue su contención de que la "**Demanda contra Tercero**" dejaba de exponer una reclamación que justificara la concesión de un remedio, por lo que procedía la desestimación de la misma.

El 20 de junio de 2023, la Recurrida presentó "**Moción en Cumplimiento de Orden sobre Oposición a Moción de Desestimación Parcial**". Planteó que las Peticionarias tomaron decisiones en el proceso del cierre no solo en su capacidad de empleadas de Oriental, sino en su carácter personal e individual. Esto es así, ya que, ambas tenían un deber de ser prudentes y razonables en sus actuaciones u omisiones, el cual está atado a su licencia profesional, la cual se obtiene u ostenta en su capacidad individual. A esos efectos, añadió que la licencia profesional del individuo no está atada al patrono, sino que es una responsabilidad personal e individual. Específicamente, en cuanto a Guadalupe, expuso que ésta le orientó incorrectamente sobre el proceso de obtención del permiso de uso, que el ofrecimiento de un periodo de gracia no es lo mismo que una moratoria y que ambas actuaciones las efectuó sin consultarle a Oriental. Expresó que las Peticionarias obtuvieron una comisión pecuniaria por el cierre del préstamo comercial objeto del litigio, beneficiándose y enriqueciéndose injustamente de la situación de la Recurrida. De conformidad con lo anterior, aseveró que la solicitud de desestimación parcial presentada por ambas carecía de méritos y que la "**Demanda contra Terceros**" era susceptible de ser enmendada.

Evaluados los argumentos de las partes, el TPI dictó *Resolución y Orden.* Concluyó el foro *a quo* que la reclamación de Tirado era una sobre daños contractuales y extracontractuales, y que la misma no constituía una acción redhibitoria tal como se expresa en los Artículos 1267, 1268 y 1270 del Código Civil del 2020, 31 LPRA secs. 9871, 9872 y 9874. Por tanto, coligió que la "**Demanda contra Terceros**" expone una reclamación que justifica la concesión de un remedio en contra de las Peticionarias, pues incluye alegaciones respecto a éstas, tanto en su carácter profesional como

personal e incluso, señala que las Peticionarias se apartaron de la mejor práctica de su profesión durante el proceso de compraventa y otorgación del préstamo comercial hipotecario. Añadió que las alegaciones esgrimidas por Tirado en contra de éstas son serias y ameritan que las mismas sean evaluadas en unión con la prueba que en su día se presente. Asimismo, expuso que el caso estaba iniciando y que no se habían celebrado vistas y el descubrimiento de prueba no estaba en una etapa avanzada. A tenor con lo anterior, declaró "No Ha Lugar" la solicitud de desestimación parcial interpuesta por las Peticionarias.

Insatisfechas, el 7 de septiembre de 2023, las Peticionarias presentaron "**Moción de Reconsideración**" y el 25 de septiembre de 2023 Tirado presentó "**Moción en Cumplimiento de Orden sobre Oposición a Moción de Reconsideración**". El 12 de octubre de 2023, el TPI emitió *Resolución* mediante la cual denegó la solicitud de reconsideración radicada por las Peticionarias. Aún inconformes, estas últimas presentaron el recurso que nos ocupa y le imputaron al foro primario la comisión de los siguientes errores:

> **PRIMER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA EN SU ANÁLISIS DE LA MOCIÓN DE DESESTIMACIÓN PRESENTADA POR LAS PETICIONARIAS CUANDO EN ESTE CASO -VISTAS LAS ALEGACIONES DE LA MANERA MÁS FAVORABLE PARA LA TERCER DEMANDANTE- NO HAY UNA SOLA ALEGACIÓN QUE JUSTIFIQUE LA CONCESIÓN DE UN REMEDIO A FAVOR DE LA TERCERA DEMANDANTE Y EN CONTRA DE LAS PETICIONARIAS.**
>
> **SEGUNDO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONSIDERAR EN CONJUNTO CUATRO MOCIONES DE DESESTIMACIÓN Y DENEGARLAS BAJO UN MISMO FUNDAMENTO CUANDO LAS CUATRO MOCIONES DE DESESTIMACIÓN RESPONDEN A ALEGACIONES DISTINTAS Y CUANDO A CADA UNA LES APLICA UN DERECHO PARTICULAR QUE -EN LO QUE RESPECTA A LA MOCIÓN DE DESESTIMACIÓN DE LAS PETICIONARIAS- EL TRIBUNAL DE PRIMERA INSTANCIA NO LLEGÓ A SOPESAR EN SU DETERMINACIÓN.**
>
> **TERCER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL ELUDIR APLICAR EL PRINCIPIO DE RESPONSABILIDAD VICARIA Y -POR NEGATIVA- NO DESESTIMAR LA DEMANDA CONTRA TERCERO DIRIGIDA EN CONTRA DE LAS EMPLEADAS DE ORIENTAL CUANDO NO EXISTE REMEDIO EN LEY QUE PUEDA SER CONCEDIDO A FAVOR DE LA TERCERA DEMANDANTE Y EN CONTRA DE LAS PETICIONARIAS.**

Asimismo, las Peticionarias solicitan que se le imponga a la Recurrida la cantidad de $5,000.00, en concepto de honorarios de abogado por temeridad por las inconveniencias que acarrea tener que defenderse de un reclamo injustificado como el alegado en la "**Demanda contra Terceros**". El 15 de noviembre de 2023, emitimos *Resolución* mediante la cual le concedimos a la Recurrida un término para que presentara su alegato en oposición. El 27 de noviembre de 2023, Tirado presentó su alegato en oposición.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

## A.

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, y su jurisprudencia interpretativa le confiere al demandado la oportunidad de presentar cualquiera de las siguientes defensas: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) que las alegaciones del demandante dejan de exponer una reclamación que justifique la concesión de un remedio; y (6) la falta de una parte indispensable. Comisión v. González Freyre *et al*., 211 DPR ___ (2023); 2023 TSPR 28.

La moción de desestimación bajo la Regla 10.2 de Procedimiento Civil, *supra*, es una defensa que formula el demandado antes de presentar su contestación a la demanda, en la cual solicita que se desestime la demanda presentada en su contra. Aut. Tierras v. Moreno & Ruiz Dey. Corp., 174 DPR 409, 428 (2008); Colón v. Lotería, 167 DPR 625, 649 (2006). En general, la Regla 10.2 de Procedimiento Civil, *supra*, recoge defensas que pueden plantearse, a opción del demandado, en una moción de desestimación antes de contestar o en la misma contestación a la demanda. Casillas Carrasquillo v. ELA, 209 DPR 240, 247 (2022).

De ahí que, al considerar una moción para desestimar una demanda por ésta dejar de exponer una reclamación que justifique la concesión de un remedio, deba ser evaluada de forma crítica. Ello, puesto que el tribunal

está obligado a tomar como ciertos los hechos bien alegados en la demanda. Hecha esta salvedad, el Tribunal interpretará las aseveraciones de la demanda en la forma más favorable para el demandante formulando en su favor todas las inferencias que puedan asistirle. Rivera Sanfeliz, *et al.* v. Jta. Dir. First Bank, 193 DPR 38, 49 (2015). De igual forma, nuestro más alto foro ha establecido que:

> [A] los fines de disponer de una moción de desestimación, estamos obligados a dar por ciertas y buenas todas las alegaciones fácticas de la demanda presentada. Para prevalecer, el promovente de la moción tiene que demostrar que, aun así, la demanda no expone una reclamación que justifique la concesión de un remedio. Esta doctrina se aplica solamente a los hechos bien alegados y expresados de manera clara y concluyente, que de su faz no den margen a dudas. Pressure Vessels PR v. Empire Gas PR, 137 DPR 497, 505 (1994).

Sobre este asunto, el Dr. José Cuevas Segarra expone que "[e]n la moción de desestima[ción] no se trata de poner en duda los hechos alegados en la demanda, sino atacarla por un vicio intrínseco, por ejemplo: insuficiencia, ausencia de parte indispensable, [o] falta de jurisdicción". J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, Publicaciones JTS, San Juan, Tomo I, 2000, pág. 275.

En fin, "la demanda no deberá ser desestimada a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación". Pressure Vessels PR. v. Empire Gas P.R., *supra*, pág. 505. Consecuentemente, se debe considerar "si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida". Íd.

Ahora bien, si en una moción basada en la Regla 10.2 (5) de Procedimiento Civil, *supra*, se esbozan materias no contenidas en la alegación impugnada —y estas no son excluidas por el tribunal— la moción deberá ser considerada como una solicitud de sentencia sumaria. En consecuencia, estará sujeta a todos los trámites provistos en la Regla 36 de Procedimiento Civil, *supra*, hasta su resolución final. De manera que, todas las partes deberán tener una oportunidad razonable de presentar toda

materia pertinente a tal moción bajo dicha regla. Regla 10.2 de Procedimiento Civil, *supra.*

Relacionado con lo anterior, la jurisprudencia ha identificado casos que contienen elementos subjetivos, de intención, propósitos mentales o negligencia. A saber, "controversias en las que el factor credibilidad juega un papel esencial, si no decisivo, para llegar a la verdad, y donde un litigante depende en gran parte de lo que extraiga del contrario en el curso de un juicio vivo." Rosario Ortiz v. Nationwide Mutual Insurance Co., 158 DPR 775, 780-81 (2003). A esos efectos, "la privación a un litigante de su 'día en corte' es una medida procedente sólo en casos extremos y que debe usarse solamente en casos claros. Íd*.,* pág. 780.

**B.**

En nuestro ordenamiento jurídico, la responsabilidad civil extracontractual está regulada en el Artículo 1536 del Código Civil de Puerto Rico de 2020, el cual establece que: "[l]a persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo". 31 LPRA sec. 10801. El Artículo 1536 del Código Civil, *supra*, consagra en forma general y sin concretar determinadas acciones, lo que el Tribunal Supremo ha dicho que presupone una norma genérica que prohíbe causar daños a otro mediante una conducta, ya sea activa o pasiva. García v. ELA, 163 DPR 800, 809 (2005). En cuanto a este precepto y su aplicación, se ha establecido que sólo procede la reparación de un daño cuando se demuestren los siguientes elementos indispensables: (1) el acto u omisión culposa o negligente; (2) la relación causal entre el acto u omisión culposa o negligente y el daño ocasionado; y (3) el daño real causado al reclamante. Nieves Díaz v. González Massas, 178 DPR 820, 843 (2010).

En particular, el concepto de daños ha sido definido como "todo menoscabo material o moral causado contraviniendo una norma jurídica, que sufre una persona y del cual haya de responder otra". López v. Porrata Doria, 169 DPR 135, 151 (2006). En esa misma línea doctrinal, se ha establecido que la culpa o negligencia es la falta del debido cuidado que consiste en no anticipar y prever las consecuencias racionales de un acto, o la omisión de un acto, que una persona prudente y razonable habría

previsto en las mismas circunstancias. Nieves Díaz v. González Massas, *supra*, pág. 844; Rivera v. S.L.G. Díaz, 165 DPR 408, 421 (2005); Toro Aponte v. E.L.A., 142 DPR 464, 473 (1997); Ramos v. Carlo, 85 DPR 353, 358 (1962). Respecto a la relación causal, ésta es un componente imprescindible en una reclamación en daños y perjuicios, ya que "es un elemento del acto ilícito que vincula al daño directamente con el hecho antijurídico." Rivera v. S.L.G. Díaz, *supra*, pág. 422. Del daño culposo o negligente surge el deber de indemnizar que "presupone nexo causal entre el daño y el hecho que lo origina, pues sólo se han de indemnizar los daños que constituyen una consecuencia del hecho que obliga a la indemnización". López v. Porrata Doria, *supra*, pág. 151.

Esto último se refiere a la teoría de causalidad adecuada que rige en nuestro ordenamiento. De acuerdo a ella, no es causa toda condición sin la cual no se hubiera producido el daño, sino la que ordinariamente lo produce según la experiencia general. Montalvo v. Cruz, 144 DPR 748, 756 (1998). La jurisprudencia ha sostenido que un daño parece ser el resultado natural y probable de un acto negligente, si después del suceso y mirando retroactivamente dicho acto, tal daño aparece como la consecuencia razonable y ordinaria del acto. Torres Trumbull v. Pesquera, 97 DPR 338, 343 (1969); Estremera v. Inmobiliaria RAC, Inc., 109 DPR 852, 856 (1980). El principio de causalidad adecuada requiere que en todo caso de daños y perjuicios el demandante pruebe que la negligencia del demandado fue la que con mayor probabilidad causó el daño sufrido. Parrilla Báez v. Ranger American of P.R., 133 DPR 263, 270 (1993). De esta forma, un demandado responde en daños si su negligencia por su acción u omisión es la causa próxima del daño, aun cuando no sea la única causa del daño. Velázquez v. Ponce, 113 DPR 39, 45 (1982). Por tanto, la cuestión se reduce a determinar si la ocurrencia del daño era de esperarse en el curso normal de los acontecimientos o si, por el contrario, queda fuera de ese posible cálculo.

La prueba o evidencia circunstancial es intrínsecamente igual a la prueba o evidencia directa. Pueblo v. Pagán Santiago, 130 DPR 470, 479 (1992). Si un caso penal se puede probar mediante prueba circunstancial, cuanto más uno en la zona civil. E. L. Chiesa, Tratado de Derecho

Probatorio, T. II, pág. 1238. No existe duda, pues, que, bajo nuestro derecho probatorio, la negligencia en los casos de daños es susceptible de ser probada, al igual que cualquier otro hecho en cualquier caso, mediante prueba circunstancial. Rodríguez v. Ponce Cement Corp., 98 DPR 201, 207-208 (1969).

A la luz de lo anterior, para que prospere una acción en daños en nuestra jurisdicción, es preciso que el demandante demuestre, por preponderancia de prueba, la realidad del daño sufrido, la existencia de un acto culposo u omisión negligente y, además, el elemento de causalidad. Art. 1536 del Código Civil, *supra*. La suficiencia, contundencia o tipo de prueba presentada, así como el valor que los tribunales le darán, dependerá, naturalmente, de las circunstancias particulares de cada caso, de conformidad con nuestro derecho probatorio. Sin embargo, la prueba presentada deberá demostrar que el daño sufrido se debió con mayores probabilidades a la negligencia que el demandante imputa. Se requiere, además, que la relación de causalidad entre el daño sufrido y el acto negligente no se establezca a base de una mera especulación o conjetura. Castro Ortiz v. Mun. de Carolina, 134 DPR 783, 793 (1993).

**C.**

En nuestro ordenamiento jurídico, "la obligación de reparar daños generalmente dimana de un hecho propio". Vélez Colón v. Iglesia Católica, 105 DPR 123, 127 (1976). No obstante, como excepción a esta norma, está la figura de responsabilidad vicaria, que le impone responsabilidad a uno por los actos cometidos por otro. Cruz Flores *et al.* v. Hosp. Ryder *et al.*, 210 DPR 465, 485 (2010). Este precepto "impone responsabilidad por los actos u omisiones, culposas o negligentes, de aquellas personas por quienes se debe responder, siempre que con la culpa o negligencia de éstas concurra la del principal, la que se presume". Hernández Vélez v. Televicentro, 168 DPR 803, 814 (2006).

En ese sentido, el Artículo 1540 (d) del Código Civil establece que, en cuanto a la responsabilidad que alude el Artículo 1536, *supra*, responden también "los patronos públicos o privados, por los daños que causan sus empleados en el servicio de las ramas en que los tengan empleados o con

ocasión de sus funciones". 31 LPRA sec. 10805. Así pues, se reconoce la responsabilidad extracontractual de un patrono, de manera excepcional, por actuaciones de sus empleados siempre que éstos hubieran actuado dentro del marco de sus atribuciones o funciones. Hernández Vélez v. Televicentro, *supra*, pág. 815.

> Sobre este particular, hemos resuelto que el criterio determinante para establecer la responsabilidad del patrono es si al llevar a cabo su actuación, el agente tenía el propósito de servir y proteger los intereses de su patrono y **no los suyos propios**, **y si su actuación fue incidental al cumplimiento de las actuaciones autorizadas**. Esto es, si existe una conexión razonable y pertinente entre el acto del agente y los intereses del patrono, y si el acto del agente tiende razonablemente a imprimirle efectividad al objetivo final del patrono.

> A tono con lo anterior, hemos resuelto que **la prueba** para determinar la responsabilidad del patrono respecto a los actos del empleado no es si el acto de éste ha sido voluntario e intencional, **sino si actuaba en beneficio del negocio del patrono y dentro de la esfera de su autoridad, o si se desvió de sus funciones y realizó un acto dañoso de carácter personal**. Íd. (énfasis suplido).

Así pues, se dispone que la responsabilidad del patrono se extiende a actuaciones temerarias, voluntarias, intencionales, desenfrenadas o maliciosas de su empleado, al igual que a actos imprudentes y descuidados mientras son realizados cuando este último actúa en el ejercicio de sus facultades y en el curso de su empleo o con el objetivo de adelantar el negocio del empleador y no con un propósito persona suyo. Íd.

**D.**

El Artículo 1158 del Código Civil dispone que quedan sujetos a indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier otro modo contravinieren a tenor de aquellas. 31 LPRA sec. 9303. Es importante destacar que la buena fe contractual no se manifiesta tan sólo al comienzo del contrato o en la fase de la negociación, sino que está presente mientras dure la relación contractual. En consecuencia, "cuando el incumplimiento de una obligación contractual produjere daños a una de las partes contratantes, procede una acción de daños y perjuicios por incumplimiento contractual". Soc. de Gananciales v. Vélez & Asoc., 145 DPR 508, 521 (1998). Por consiguiente,

"[l]as acciones *ex contractu* solo pueden ser ejercidas por una parte contratante en contra de la otra". Rivera Sanfeliz v. Jta. Dir. FirstBank, 193 DPR 38, 57 (2015).

El Código Civil de Puerto Rico distingue entre las acciones de daños y perjuicios extracontractuales y las acciones derivadas del incumplimiento contractual, bajo el Artículo 1158, *supra*. "Mientras que la acción de daños y perjuicios extracontractuales del Artículo 1802 [hoy Artículo 1536 del Código Civil de 2020, *supra*], protege el deber general de diligencia necesario para la convivencia social, la acción *ex contractu* se fundamenta en el incumplimiento de un deber que surge de un acuerdo de voluntades previo entre las partes". Muñiz-Olivari v. Stiefel Labs., 174 DPR 813, 818 (2008). Recordemos que la culpa o negligencia a que se refiere el Artículo 1536 del Código Civil, *supra*, es aquella no relacionada con una obligación anterior. Ramos Lozada v. Orientalist Rattan Furniture, Inc., 130 DPR 712, 721 (1992). Sino a los principios generales de convivencia social que suponen no causar un daño a otro. Rivera Sanfeliz v. Jta. Dir. FirstBank, *supra*, pág. 57. Ahora bien, si el hecho que constituye un incumplimiento contractual también constituye una violación extracontractual, el demandante podrá escoger dicha causa de acción para vindicar sus derechos. Ramos Lozada v. Orientalist Rattan Furniture, *supra*, pág. 728. Dicho de otra forma, se reconoce en nuestra ordenamiento la teoría de la concurrencia de acciones de resarcimiento derivadas de un contrato y, a la vez, de un acto ilícito extracontractual. Maderas Tratadas v. Sun Alliance, 185 DPR 880, 910 (2012).

**III.**

Por estar íntimamente relacionados y dado al hecho de que las Peticionarias discutieron conjuntamente los tres (3) señalamientos de error, adjudicamos, de igual forma, las controversias que nos ocupan. Veamos.

En esencia, las Peticionarias sostienen que el TPI erró al denegar su solicitud de desestimación parcial, bajo el entendido de que la liberalidad del análisis de una moción de desestimación al amparo de la Regla 10.2 (5) de Procedimiento Civil, *supra*, no es absoluta y que el foro primario erró al atender cuatro (4) mociones de desestimación presentadas por varios

terceros demandados, incluyendo las Peticionarias, en un mismo dictamen. Además, exponen que toda demanda es susceptible de ser enmendada, pero ello no debe servir de base para la denegatoria de una moción de desestimación. Asimismo, argumentan que las alegaciones en su contra son descarnadas y fueron hechas con el único objetivo de importunarlas y sujetarlas a los vejámenes e inconveniencias de un litigio. Del mismo modo, plantean que el análisis bajo la Regla 10.2 (5) de Procedimiento Civil, *supra*, no requiere que la parte promovente de la solicitud de desestimación aporte prueba sobre su falta de responsabilidad, ni requiere la iniciación de un descubrimiento de prueba o avanzar a etapas del proceso con el costo que ello acarrea. Finalmente, arguye que el TPI erró al no aplicar la doctrina de responsabilidad vicaria, toda vez que la "**Reconvención**" presentada por Tirado está predicada en los mismos hechos y alude a los mismos daños que se alegan en la "**Demanda contra Terceros**". Diferimos de la posición de las Peticionarias. Nos explicamos.

El análisis de las alegaciones consignadas en la "**Demanda contra Terceros**" revela que las causas de acción interpuestas por la Recurrida en contra de las Peticionarias están predicadas en los daños contractuales y extracontractuales que las alegadas actuaciones de éstas le ocasionaron. Igualmente, de una somera lectura de éstas se puede concluir que existen una serie de elementos subjetivos y de credibilidad que serán necesarios que el foro recurrido aquilate con la presentación de prueba a esos efectos. Advertimos, además, que lo único que requiere nuestro ordenamiento jurídico en torno a las alegaciones es una relación sencilla y sucinta de los hechos que demuestren que la parte suscribiente puede tener derecho a un remedio. *Véase*, Regla 6.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 6.1. Una alegación corta, clara, simple, concisa y directa será suficiente. Así, no se exigirán fórmulas técnicas para la redacción de las alegaciones, ya que éstas se interpretarán con el propósito de hacer justicia. *Véase*, Regla 6.5 de Procedimiento Civil, 32 LPRA Ap. V, R. 6.5. Lo esencial es que, a la luz de las alegaciones de la demanda, los demandados estén razonablemente prevenidos de lo que los demandantes intentan reclamar.

No nos cabe la menor duda de que las Peticionarias tienen una noción clara de los hechos que, según la Recurrida, son constitutivos de los daños alegados. Por tanto, contrario a lo alegado por las Peticionarias, no creemos que las mismas sean descarnadas y, a esta etapa de los procedimientos, no estamos ante un cuadro jurídico que nos permita concluir que se efectuaron con el único propósito de importunarlas y sujetarlas a las inconveniencias de un litigio. Así pues, tomando como ciertas las alegaciones esgrimidas por Tirado, concluimos que ésta tiene una reclamación que justifica la concesión de un remedio. A nuestro juicio, la "**Demanda contra Terceros**" contiene hechos suficientes para entender que la Recurrida ha sufrido un daño a consecuencia de las actuaciones de las Peticionarias y que existe una relación causal entre los daños alegados y los actos efectuados por estas últimas.

Así pues, el marco fáctico y procesal reseñado nos lleva a concluir que la desestimación de las reclamaciones incoadas por Tirado a esta etapa de los procedimientos resultaría en una determinación prematura. Coincidimos con el foro *a quo* en que es necesario que se aporte prueba que establezca la forma en que se suscribió el préstamo en controversia y se determine la procedencia de las alegaciones relacionadas con el vicio del consentimiento alegado por la Recurrida, en unión a las acciones que se le imputan a las Peticionarias. Nótese que las alegaciones de Tirado en cuanto al incumplimiento contractual por parte de Oriental, en unión con las presuntas actuaciones u omisiones culposas desplegadas por las Peticionarias aluden a actos intencionales que hacen indispensable la presentación de evidencia que así lo establezca.

Más cuando, como en el caso de autos, en la adjudicación de las controversias ante la consideración del TPI el factor credibilidad juega un papel esencial para arribar a la verdad, y donde ambas partes dependen en gran parte de lo que se pueda extraer de la otra en el curso de un juicio o como parte de un descubrimiento de prueba. Ello es cónsono con la política arraigada en nuestra jurisdicción de que la privación a un litigante de su día en corte es una medida procedente sólo en casos extremos y que debe

utilizarse cuando no existe duda alguna sobre las reclamaciones presentadas ante el tribunal.

De igual manera, nada en nuestro ordenamiento jurídico proscribe que los tribunales de instancia puedan adjudicar distintas mociones dispositivas en un mismo dictamen. Pero, aun haciendo abstracción de lo anterior, coincidimos con el análisis empleado por el TPI para denegar la solicitud de desestimación parcial de las Peticionarias. Ello porque sus conclusiones se ajustan a la norma consistentemente establecida por nuestro Tribunal Supremo. A fin de cuentas, la función revisora de este foro apelativo intermedio se da sobre el resultado y no contra los fundamentos del TPI.

Finalmente, tampoco proceden los argumentos traídos ante nuestra consideración sobre responsabilidad vicaria. Si bien es cierto que un patrono es responsable por las actuaciones culpables y negligentes de sus empleados en curso ordinario de sus facultades relacionadas al empleo, no es menos cierto que se ha resuelto que es indispensable que **se aporte prueba para determinar la responsabilidad del patrono respecto a los actos del empleado y que se pueda concluir si éste actuaba en beneficio del negocio del patrono y dentro de la esfera de su autoridad, o si se desvió de sus funciones y realizó un acto dañoso de carácter personal**.

En suma, es nuestra opinión que el TPI actuó correctamente en denegar la solicitud de desestimación parcial presentada por las Peticionarias. No estamos ante un panorama jurídico en el que se pueda concluir válidamente que a base de los hechos bien alegados y expresados se pueda entender que de su faz la Recurrida no tenga remedio alguno en ley. Es decir, asumidas como ciertas las alegaciones consignadas en la "**Demanda contra Terceros**" y consideradas de la manera más favorable y liberal a favor de la Recurrida, existe una causa de acción en contra de las Peticionarias. No procede la revocación de la determinación recurrida.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, *expedimos* el auto de *certiorari* y *confirmamos* la *Resolución y Orden* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones